**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CREATION ENTERTAINMENT, INC.<br><br>                    Plaintiff,<br><br>        v.<br><br>SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>                    Defendants. | Civil Action No. 22-684 (ABJ) |

## FIRST AMENDED COMPLAINT

Plaintiff Creation Entertainment, Inc. ("Creation"), by and through counsel, alleges and states as follows:

### INTRODUCTION

1.      This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by Defendants Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman.

2.      The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, as amended, 15 U.S.C. § 9009a, established the Shuttered Venue Operators Grant ("SVOG") Program to provide emergency financial assistance to eligible live entertainment businesses impacted by the global COVID-19 pandemic. The SVOG Program is administered by the SBA and Administrator Casillas Guzman.

3.      Plaintiff Creation demonstrated its eligibility for a SVOG award in its application to the SBA and, following an initial denial, its appeal to the SBA. The SBA denied Creation's application and its appeal. Since that time Creation has provided the SBA with overwhelming

evidence that it qualifies for an SVOG award, evidence that the SBA is now choosing deliberately and wrongfully to ignore. *See* Ex. 1, July 1, 2022 Declaration of Edward Rodriguez; and Ex. 2, July 14, 2022 Creation Letter.

4.     Creation has been producing live entertainment shows centering on genre television and film for more than 50 years. Creation hires actors of popular science fiction film and television shows to put on live theatrical and musical performances through licensing agreements for which the actors are paid handsomely by way of revenue from ticket sales.

5.     The SBA improperly labelled Creation a promoter of "science cosplay conventions." *See* Ex. 3., July 7, 2022 SBA Letter ("A holistic review of the application, submitted documentation, applicant's website and social media pages indicates that the applicant's principal business activity is to organize, plan, create and promote science cosplay conventions."). The SBA's conclusion appears to be based solely on the subject matter and genre of Creation's theatrical performances. As discussed more fully below and in the attached documents, all of Creation's shows are ticketed and fans sit in fixed seats. Ticket prices rise the closer a seat is to the stage. Front row seating costs over one thousand dollars and the events consist of live musical and theatrical performances by well-known actors. Creation earns de minimis revenue from vendor booths and provides vendor space that is less than 5% of the overall venue. Additionally, 76% of Creation's total business expenses go to paying performers for their theatrical performances.

6.     Thus Creation meets each of the SVOG eligibility criteria specific to a live performing arts organization operator. The SBA's denial of Creation's SVOG application was arbitrary, capricious, an abuse of discretion and otherwise unlawful.

7.     In early spring 2020, the COVID-19 pandemic, as well as associated restrictions regarding live entertainment, halted Creation's business. As a live performing arts organization,

the company suffered a 93 percent loss in revenue in 2020 as compared to revenues in 2019.

| 2019 Revenue | 2020 Revenue |
|---|---|
| $23,364,955.33 | $1,621,085.74 |

8.      Creation was forced to shut down and cancel all its scheduled events after March 2020. Creation did not earn any revenue from April 2020 through December 31, 2020.

9.      Creation was entitled to first priority review for its SVOG award due to the 100% revenue decline it suffered from April 2020 December 2020.

10.     Creation subsequently resumed live operations in February 2021. During the first quarter of 2021, Creation suffered a 97% loss in revenue as compared to the first quarter of 2019.

| 2019 Q1 Revenue | 2021 Revenue |
|---|---|
| $4,031,192.03 | $392,547.02 |

11.     Creation needs an SVOG award for precisely the reason Congress created the SVOG Program: to help eligible live entertainment businesses like Creation recover from the major setbacks they have experienced because of the pandemic.

12.     SVOG funds are limited, and once the SBA has depleted the appropriated amount through awards, eligible businesses may not be able to receive the emergency assistance. Thus, even though Creation demonstrated that it is an eligible applicant, it may receive no assistance if SVOG funds are depleted before the SBA corrects the erroneous denial of Creation's application.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

14.     Venue lies in this district under 28 U.S.C. § 1391(e)(1).

15.     This Court has authority to issue declaratory and injunctive relief under 5 U.S.C.

3

§ 706 and 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

16.     Plaintiff Creation is a Glendale, California based live performing arts organization operator. Creation organizes, promotes, and produces live entertainment shows throughout the United States for fans of genre television and film.

**CREATION ENTERTAINMENT**





17.    Defendant Small Business Administration is an independent agency of the federal government.  The SBA's mission is to help Americans start, build,  grow and sustain businesses.

18.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and oversees its operations.  Administrator Casillas Guzman is sued in her official capacity.

## BACKGROUND

### A.  Shuttered Venue Operators Grant Program

19.    The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act"), signed into law December 27, 2020, included $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000 for SVOG awards.  Pub. L. No.117-2 § 5005(a).

20.    SVOG awards may be used for specified business expenses, including payroll, rent and utility payments, which are incurred between March 1, 2020, and December 31, 2021. 15 U.S.C. § 9009a(d)(1)(A)(i).

21.    An eligible entity may receive an SVOG award in an amount equal to 45 percent ofits gross earned revenue in 2019.  15 U.S.C. § 9009a(c).

22.    Eligible businesses with 2021 first quarter revenues of no more than 30 percent of their 2019 first quarter revenues are eligible for supplemental grants in the amount of 50 percent of the original award amount, up to a maximum combined initial and supplemental SVOG award amount of $10 million. 15 U.S.C. § 9009a(b)(3)(A); SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue Operators Grant Awardees* (Aug. 27, 2021), https://www.sba.gov/article/2021/aug/27/sba-opens-supplemental-grant-applications-shuttered-venue-operators-grant-awardees.  Supplemental awards can be used for costs incurred through

June 30, 2022. 15 U.S.C. § 9009a(d)(1)(A)(i).

23.     Eligible entities under the Act include live performing arts organization operators and live venue operators, as well as promoters, theatrical producers, museum operators, motion picture theatre operators, and talent representatives. 15 U.S.C. § 9009a(a)(1)(A).

24.     In addition to falling within an eligible business category, to qualify for an SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25 percent reduction of gross earned revenue during at least one quarter of 2020 as compared to 2019, and has reopened or intends to reopen. 15 U.S.C. § 9009a(a)(1)(A). The Act lists a number of characteristics that would render an entity ineligible, including, *inter alia*, issuance of securities on a national securities exchange, employing more than 500 employees, and presenting live performances of a prurient sexual nature. *Id.* § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B).

25.     The Act defines live venue operator or promotor, theatrical producer, or live performing arts organization operator identically. 15 U.S.C. § 9009a(a)(3)(A)(i). The definition includes an entity that as a principal business activity organizes, promotes, produces manages or hosts live concerts, comedy shows, theatrical production or events by performing artists for which there is a ticketed cover charge, performers are paid in an amount set by sales or for agreement, and not less than 70 percent of revenue is generated through ticket sales or event beverages, food or merchandise. *Id.*

26.     The Act specifies that for a live performing arts organization operator (as well as a live venue operator or promotor, or theatrical producer) to be eligible, the entity must have additional characteristics. It must put on events with defined performance and audience spaces; use mixing equipment, a public address system and a lighting rig; engage one or more individuals

to carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, or box office manager; sell tickets or impose a cover charge for most performances; fairly pay artists; and market its events including through print or electronic publications, websites, mass email, or social media.  15 U.S.C. § 9009a(a)(1)(A)(iii).

27.  On June 25, 2022, Congress rescinded $1.2 billion of the appropriations available for the SVOG Program. Pub. L. No. 117-158 § 4(a)(3).

28.  As of July 5, 2022, the SBA had distributed a total of $14.57 billion in SVOG award funds.

29.  Of the $16.25 billion originally appropriated for the SVOG Program, only approximately $400 million remains for SVOG initial and supplemental awards as well as all SBA contractor and staff costs for post-award administration of the SVOG program.

**B.  Implementation of the SVOG Program**

30.  The SBA implemented the SVOG program through the publication of regulations in the Federal Register and guidance and procedural notices on its SBA website.

31.  On March 26, 2021, the SBA published its only regulations in the Federal Register pertaining to the SVOG program. The regulations stated that the SBA would begin receiving applications on April 8, 2021 and would continue receiving submissions until SVOG funds were exhausted.

32.  On January 27, 2021, the SBA published a list of frequently asked questions with answers ("FAQ"). The SBA published eleven subsequent versions of its FAQs (February 5, 2021; February 12, 2021; February 28, 2021; March 5, 2021; March 12, 2021; March 22, 2021; April 6, 2021; April 8, 2021; April 23, 21; July 7, 2021; and October 10, 2021).

33.  On March 5, 2021, the SBA published an application checklist to assist applicants

with gathering documents needed to support their eligibility. The SBA published three subsequent versions of the checklist (March 11, 2021, April, 23, 2021; and July 28, 2021).

34.     On April 8, 2021, the SBA published a SVOG user guide on its website. On April 23, 21, the SBA published a second version of the user guide.

35.     On July 13, 2021, the SBA published an SVOG eligibility matrix summarizing the application requirements in table format.

36.     The SBA also provided three instructional webinars for applicants (January 14, 2021; February 2, 2021; and March 31, 2021).

37.     All SVOG applicants had to apply for funds through the SVOG application portal on the SBA website.

38.     The SVOG portal had size limitations, and the SBA did not accept files over 35 MBs.

39.     The SVOG portal was designed to not allow an applicant to skip a required question or fail to upload a document in a required location.

40.     The SBA maintained a policy of notifying applicants of errors in their applications and giving applicants an opportunity to correct errors and/or upload additional documents in support of their applications.

41.     The SBA maintained a policy authorizing SBA personnel to email or call applicants and request additional evidence or documents in an effort to correct deficient applications.

42.     SBA personnel regularly spoke to applicants and helped them locate and upload necessary documents.

43.     The SBA maintained a policy encouraging SBA personnel to look beyond the application and supporting documents submitted through the SVOG portal. SBA personnel

conducted reviews of an applicant's website, social media sites, Google and Yelp reviews, Google search information, Youtube videos and other publicly available information.

44.     On August 20, 2021, the SBA stopped accepting new SVOG applications.

45.     The SBA continues to overturn SVOG denials and to accept supplemental documents, evidence and information from previously denied applicants.

## C.  Creation's SVOG Application and the SBA's Denial

46.     Due to the significant amount of money at stake and the complexities of the SVOG program, Creation hired the Certified Public Accounting firm, Weiss Accountancy LLP, to assist with its SVOG application.

47.     On April 28, 2021, Creation applied for a SVOG award of $9,699,500.00. In its application, Creation demonstrated that it satisfied the criteria for eligibility as a live performing arts organization operator. *See* 15 U.S.C. § 9009a(a)(3)(A) (defining the term "live venue operator or promotor, theatrical producer, or live performing arts organization operator"). Creation demonstrated that its losses in 2020 exceeded the 25 percent statutory threshold by submitting its financial statements and tax returns for 2019 and 2020.  Creation also submitted, among other things: (i) documents demonstrating the performance space and defined audience space (floor plan), lighting rig (photos of lighting), mixing equipment (photos of sound mixing equipment) and public address system (photos of PA system); (ii) ticketing reports and box office information; (iii) contracts with venues and theatrical personnel; and (iv) advertising and marketing documents. Creation further provided the certifications of eligibility required by the SBA's guidance on SVOG applications. Additionally, Creation uploaded pictures of its shows, as well as links to publicly available information showing the quality and nature of its shows.

48.     On July 6, 2021, Creation learned from the SBA's portal that its application was

9

denied. No reason was given for its denial.

49.    Creation was confused by its denial and attempted on several occasions to reach someone from the SBA in order to obtain a more detailed explanation for why Creation was denied the SVOG funds.  Creation was never able to speak to a representative from the SBA.

50.    As described in more detail below, Creation could have easily cured the SBA's perceived deficiencies with its application had the SBA simply notified Creation of the reason for its denial.

51.    On August 17, 2021, Creation submitted an administrative appeal of the denial to the SBA. At the time of its appeal, Creation still did not know the reason for its denial and was forced to guess. Creation explained in detail and with supporting documentation how it meets each of the general eligibility requirements for an SVOG award and each of the specific eligibility requirements for live performing arts organization operators. Creation's supporting documentation included: its quarterly income statements for 2019 and 2020; 2019 and 2020 federal tax returns; advertising materials; contracts with live performing artists; box office records reflecting ticket sales; employee records and contractor agreements reflecting engagement of a sound engineer, stage manager, security personnel, box office manager, and bookers  and  promoters; photographs and  floorplans  demonstrating  its defined performance space, audience space, sound mixing equipment, public address system, and lighting rig; payroll and other records reflecting its periods of operation; web links to marketing materials and websites; and other documentation.

52.    On August 25, 2021, the SBA notified Creation that its appeal was denied. No reason was given for the denial.

53.    On May 12, 2022, the SBA rescinded its denial and notified Creation that it would be issuing a new decision.

10

54. On July 1, 2022, Creation's Chief Financial Officer, submitted a sworn declaration to the SBA. *See* Ex. 1. The declaration summarized previously submitted evidence and demonstrated (under oath) that Creation unequivocally qualifies for an SVOG award.

55. The declaration included (among other evidence) the following statements:

(i) Creation derives 100% of its revenue from the organization and production of live theatrical events;

(ii) Creation derives 93% of its revenue directly from ticket sales;

(iii) Creation's largest business expense is paying its talent to perform at its shows, which accounts for 76% of its overall expenses;

(iv) Creation's shows are ticketed and the prices for seats rise as individuals are seated closer to the stage;

(v) All performers are paid;

(vi) A summary of the most common and representative theatrical and musical events that take place at its shows.

56. On July 7, 2022, the SBA issued its new decision. *See* Ex. 3.

57. The SBA decision stated that it denied Creation's application because: (i) Creation failed to present adequate evidence of qualifying live performances; and (ii) Creation failed to provide evidence that its performers are paid.

58. The SBA's decision contradicts and ignores the application materials submitted by Creation, including (i) pictures of its events; (ii) its ticketing information;  (iii) its financial statements; (iv) its venue contracts; and (v) copies of its talent contracts. The decision also contradicts the available information on Creation's website and social media accounts. Creation's website includes information showing the actors who are scheduled to perform at upcoming events as well as pictures of past events. Moreover, a simple Google search of any of Creation's shows produces hundreds of videos of live musical and theatrical performances.

11

59.     The SBA decision also directly contradicts the declaration of Mr. Rodriguez. *See* Ex. 1 at ¶¶ 7,14 (averring that Creation had submitted substantial evidence to the SBA conclusively demonstrating that Creation's performers are paid); ¶¶ 9-14 (averring to the live performances put on by Creation).

60.     On July 14, 2022, Creation submitted a letter to the SBA addressing its two concerns in great detail. *See* Ex. 2. The letter provided the SBA with overwhelming evidence that Creation does indeed qualify for the SVOG award, including videos of its past live performances and copies of its contracts with its performers. *Id*. Creation further offered to provide any additional evidence the SBA may have needed to approve Creation's SVOG application.

61.     On August 2, 2022, the SBA responded to Creation's letter, tacitly acknowledging that Creation appears to qualify for an SVOG award but concluding that the SBA would not fund the award because the supporting evidence was not timely submitted to the SBA. *See* Ex 4, August 2, 2022 SBA letter.

62.      The SBA's August 2, 2022 denial of Creation's application is the agency's final decision.

## CLAIMS FOR RELIEF

63.     The courts recognize a strong presumption favoring judicial review of administrative action.

64.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.

65.     The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

66. The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E), respectively.

67. The SBA is an "agency" whose final actions are reviewable under the APA.

**COUNT I - ARBITRARY AND CAPRICIOUS AGENCY ACTION**

68. Creation realleges and incorporates by reference each of the preceding paragraphs and allegations.

69. A basic requirement of administrative law is that an agency provide the reasons and bases forits decisions. The SBA failed to give any reason for denying Creation's application and its subsequent appeal until July 7, 2022.

70. Within a matter of days, Creation was easily able to provide sufficient evidence to overwhelmingly disprove the SBA's factual conclusions.

71. The SBA's failure to contact Creation, return Creation's telephone calls, or accept its evidentiary submissions violates the SBA's congressionally mandated duty to implement the SVOG program and supply emergency funds to businesses who meet the statutory criteria.

72. The SBA's decision on Creation's application is contrary to and ignores the overwhelming evidence of Creation's eligibility that Creation presented to the SBA in its application and in its appeal.

73. The SBA's decision to deny Creation's application is also contrary to and ignores the publicly available information reviewed by the SBA concerning Creation and its business.

74. The SBA further erred by treating Creation disparately from similarly situated businesses that were granted SVOG awards. Specifically, the SBA approved the SVOG application of the following Creation competitors:

- Clexacon LLC

- Mischief Management LLC

- Walker Stalkers LLC

75.    The SBA's funding of the aforementioned entities has further exacerbated Creation's COVID-related damages. The SVOG'S disparate funding decisions have served as a significant competitive advantage to Creation's competitors. In fact, many of those acompanies attract precisely the same customers as Creation and have been able to market and put on more elaborate performances than Creation due to their receipt of SVOG funds.

76.    The SBA further erred by treating Creation disparately from other applicants in that it failed to give Creation an opportunity to be heard and to fix its allegedly deficient application and failed to timely notify Creation of the reasons for its denial.

77.    For each of these reasons, the SBA's denial of Creation's SVOG award request is arbitrary and capricious.

## COUNT II - AGENCY ACTION CONTRARY TO LAW

78.    Creation realleges and incorporates by reference each of the preceding paragraphs and allegations.

79.    Creation meets the Act's definition of a live performing arts organization operator and satisfies the Act's general eligibility criteria for a SVOG award.

80.    The SBA's denial of Creation's SVOG award request therefore violated the Act and is contrary to law.

## COUNT III - AGENCY DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

81.    Creation realleges and incorporates by reference each of the preceding paragraphs and allegations.

14

82. The SBA's denial of Creation's SVOG award request is supported by no evidence in the record, let alone substantial evidence. Creation's application and appeal presented evidence that demonstrates Creation is eligible for a SVOG award.

83. The SBA's denial of Creation's SVOG award request is thus unsupported by substantial evidence.

## COUNT IV – DEPRIVATION OF DUE PROCESS AND EQUAL PROTECTION IN VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

84. Creation realleges and incorporates by reference each of the preceding paragraphs and allegations.

85. The two fundamental precepts of the rights afforded under the Due Process Clause of the Fifth Amendment to the U.S. Constitution are notice and an opportunity to be heard.

86. The allegations set forth above demonstrate that the SBA deprived Creation of both notice and an opportunity to be heard.

87. The SBA never provided any notice to Creation as to the alleged deficiencies in its application, deficiencies Creation could have immediately addressed had it been afforded such notice.

88. Nor did the SBA ever provide notice to Creation that it would not accept supplemental information in support of Creation's application or that there was any properly published notice in the Federal Register or elsewhere that there existed a cut-off after which an SVOG applicant was precluded from providing such supplemental information in support of its application.

89. The SBA's sudden refusal to accept supplemental information from Creation overwhelmingly demonstrating Creation's eligibility for an SVOG award and supplemental award both deprived Creation of an opportunity to be heard on its application and constituted disparate

treatment given the SBA's repeated willingness to accept and consider supplemental information from other SVOG applicants.

## PRAYER FOR RELIEF

For the foregoing reasons, Creation respectfully requests that this Court:

90.     Declare unlawful and unconstitutional Defendants' denial of Creation's SVOG award request and set such denial aside.

91.     Preliminarily and permanently order Defendants to consider Creation's application for an SVOG award consistent with applicable law and the evidence before the SBA.

92.     Preliminarily and permanently order Defendants to award Creation $9,699,500.00 in SVOG funds.

93.     Preliminarily and permanently order Defendants to grant Creation a supplemental SVOG award of $300,500.00.

94.     Preliminarily and permanently order Defendants to retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and/or the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Creation's SVOG initial and supplemental grant awards.

95.     Award Plaintiff its costs and reasonable attorney fees; and

96.     Grant such other and further relief as the Court deems just and proper.

Dated: August 19, 2022

Respectfully submitted,

/s/  Jeffrey E. McFadden
Jeffrey E. McFadden
D.C. Bar No. 434234
LAW OFFICES OF JEFFEREY E.
MCFADDEN

312 Prospect Bay Drive E.
Grasonville, MD 21638-1181
410-490-1163
jmcfadden@jmcfaddenlaw.com

Tyler W. Hudson
D.C. Bar No. 485971
Eric D. Barton
(*pro hac vice* application to be filed)
WAGSTAFF & CARTMELL LLP
4740 Grand Ave., Suite 300
Kansas City, MO 64112
816-701-1100
thudson@wcllp.com
ebarton@wcllp.com

Matthew S. Mokwa
(*pro hac vice* application to be filed)
THE MAHER LAW FIRM, PA
398 West Morse Blvd., Suite 200
Winter Park, FL 32789
407-839-0866
mmokwa@maherlawfirm.com

**Counsel for Plaintiff**

17