UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CREATION ENTERTAINMENT, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, et al.,<br><br>Defendants. | Civil Action No. 22-0684 (ABJ) |

**MOTION FOR SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ........ i

Background ........ 1

I. The Shuttered Venue Operations Grant Program. ........ 1

II. Creation's Application for Grant Funding. ........ 3

Legal Standards ........ 4

Argument ........ 5

I. SBA Appropriately Applied the SVOG Statute and its Published Guidance in Determining Plaintiff's Principal Business Activity ........ 5

II. SBA Properly Concluded that Live Artistic Performances were not Creation's Principal Business Activity. ........ 9

III. SBA Did Not Depart from Its Internal Guidance and Precedent ........ 18

Conclusion ........ 20

Defendants the Small Business Administration, and its Administrator Kelly Leoffler (collectively "SBA") respectfully submit this memorandum in support of their cross motion for summary judgment and in opposition to Plaintiff Creation Entertainment's Motion for Summary Judgment (ECF No. 63).

Creation brings claims against the SBA under the Administrative Procedure Act stemming from SBA's decision to deny Creation's application for a grant award under the Shuttered Venue Operations Grant ("SVOG") program. SBA denied Creation's application for an award because Creation applied for a grant as a live venue operator and promoter but the materials that Creation submitted did not demonstrate that Creation met the statutory criteria to qualify for an award. Specifically, to qualify for an award as a live venue operator or promoter, Creation needed to show that its principal business activity was to organize, promote, produce, manage, or host live concerts, comedy shows, theatrical productions, or other events by performing artists. 15 U.S.C. § 9009a(a)(3)(i)(II). But Creation's application instead showed that its principal business activity was hosting fan conventions that involved audience interactions with actors through question-and-answer, autograph, and photograph sessions rather than actual performances. As demonstrated below, the Court should grant summary judgment in SBA's favor because SBA evaluated Creation's application in accordance with the SVOG statute and related guidance and reached a decision supported by the administrative record. Accordingly, the record does not support Creation's claim that SBA's decision was arbitrary, capricious, or not in accordance with the law in violation of the Administrative Procedure Act. 5 U.S.C. §706(2)(a).

## BACKGROUND

### I. <u>The Shuttered Venue Operations Grant Program.</u>

The COVID-19 public health emergency forced many, if not most, businesses in the in-person entertainment industry to cease their operations for extended periods of time. See 166

Cong. Rec. S7901 (Dec. 21, 2020) (Sen. Cornyn) ("Event venues were the first to close when COVID-19 hit, and they are likely to be the last to open once it is gone."). To "help [these businesses] stay afloat" until they could resume their normal operations, *id.,* Congress established the Shuttered Venue Operators Grant Program ("SVOG" or the "Program"). See Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, § 324, 134 Stat. 1182, 2022 (2020) (Div. N, Tit. III, Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, codified at 15 U.S.C. § 9009a).

Under the Program, an eligible entity could apply for grants of up to $10 million upon certifying "that the uncertainty of current economic conditions ma[de] necessary the grant to support [its] ongoing operations." 15 U.S.C. § 9009a(b)(1)(B), (c)(1)(A)(ii), (c)(3). To establish eligibility for a grant, an entity must have had "gross earned revenue during the first, second, third, or, only with respect to an application submitted on or after January 1, 2021, fourth quarter in 2020 that demonstrates not less than a 25 percent reduction from [its] gross earned revenue . . . during the same quarter in 2019." *Id.* § 9009a(a)(1)(A)(i)(II). An entity also needed to demonstrate that it fell within one of six enumerated categories. *Id.* § 9009a(a)(1)(A). Creation claimed it was eligible as a live venue operator or promoter. AR 0002. The statute defined a "live venue operator or promoter," as an individual or entity "that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists," and pays its performers "in an amount that is based on a percentage of sales, a guarantee (in writing or standard contract), or another mutually beneficial formal agreement," and meets certain other criteria not relevant here. 15 U.S.C. § 9009a(a)(1)(A), (a)(3)(A)(i)(I).

## II. Creation's Application for Grant Funding.

On April 28, 2021, Creation applied for a SVOG grant award of $6,233,685.84. AR 0001-02. Creation claimed it was eligible for a grant as a live venue operator or promoter. AR 0002. SBA denied Creation's application on July 2, 2021 and Creation subsequently appealed. AR 0001. On October 29, 2021, SBA denied Creation's appeal finding that Creation did not meet the principal business activity standard to qualify as a live venue operator or promoter, and did not meet one or more of the eligibility criteria to qualify as a live venue operator or promoter. AR 0022. On March 12, 2022, Creation filed suit challenging the SBA's decision. Compl. (ECF No. 1). Two months later, SBA rescinded the decision denying Creation's appeal and agreed to issue a new decision based on its review of the administrative record. AR 0021. But even after reviewing Creation's application a third time, on July 7, 2022, SBA determined that its prior decision was correct and Creation was not eligible for an award. AR 1043-46. Based on the materials that Creation had submitted, SBA determined that Creation's principal business activity is to "organize, plan, create and promote science cosplay conventions," not live performing arts events. AR 1044. Creation had also stated in its application that its performers were not paid, but the Shuttered Venue Statute requires an entity to pay its performers to qualify as a live venue operator or promoter. AR 1045 (citing 15 U.S.C. § 9009a(a)(3)(A)(i)(I)(bb)). As SBA explained in its denial letter,

> Given that there is inadequate evidence of demonstrated qualifying live performing arts at Applicant's conventions, and no payments to performers, the Applicant has failed in its application or appeal to demonstrate that its principal business activity is the presentation of qualifying live performances, it is not a live venue operator or promoter within the meaning of the SVOG statute.

AR 1046.

On August 19, 2022, Creation filed an amended complaint challenging SBA's July 7, 2022 decision. 1st Am. Compl. (ECF No. 14). Creation then filed a motion to complete the

administrative record (ECF No. 20) which the Court granted in part and denied in part. Order (ECF No. 47). Specifically, the Court ordered SBA to include a letter and declaration from Edward Rodriguez, Creation's Chief Financial Officer, *id.* at 6 (ECF No. 47), AR 1142-1244, and a set of applications submitted to the SVOG Program by comparator companies. Order at 8 (ECF No. 47); AR 1246-2158. On July 8, 2025, SBA agreed to rescind the denial and reconsider Creation's application in light of the materials that the Court had ordered added to the administrative record and the decision in *Phil Waldrep Evangelistic Ass'n v. SBA*, Civ. A. No. 22-0513 (APM), 2025 U.S. Dist. LEXIS 61016 (D.D.C. Mar. 31, 2025). See Jt. Status Rpt. (ECF No. 55).

SBA denied Creation's application for the fourth time on December 18, 2025 finding that its prior decision was correct. AR 2167. Specifically, the additional information that Creation provided did not demonstrate that "Creation's principal business activity is the presentation of live performance arts events." AR 2171. Instead, "the very limited advertising materials provided fail to show that live performing arts events are the principal attraction of the events, rather than fan interaction activities." *Id.*

**LEGAL STANDARDS**

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases challenging agency action under the APA, the district court "sits as an appellate tribunal," and review "is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quotation marks omitted). A reviewing court may set aside agency action that is "arbitrary, capricious, an abuse of discretion," "otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). Substantial evidence is that which "a reasonable mind might accept as adequate to support the [agency's] conclusion." *Mach Mining, LLC v. Sec'y of Labor*,

809 F.3d 1259, 1263 (D.C. Cir. 2016). This "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Epsilon Elecs., Inc. v. Dep't of Treasury*, 857 F.3d 913, 918, 925 (D.C. Cir. 2017) (cleaned up). "Under this highly deferential standard of review, the court presumes the validity of agency action and must affirm unless the [agency] failed to consider relevant factors or made a clear error in judgment." *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 507 (D.C. Cir. 2020) (cleaned up). So long as an agency "articulate[s] a satisfactory explanation for its action including a rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (quotation marks omitted), a court may not "substitute [its] judgment for the agency's," even if it "might have reached a different conclusion in the first instance." *Epsilon Elecs.,* 857 F.3d at 918.

## ARGUMENT

SBA denied Creation's application after determining Creation's principal business activity was not the operation or promotion of live performing arts shows pursuant to 15 U.S.C. § 9009a(a)(3)(A)(i)(I). SBA's decision to deny Creation SVOG funding is well-supported by the administrative record, not arbitrary or capricious, and not contrary to law. SBA acknowledged that some of Creation's events included live artistic performances but the administrative record demonstrated that Creation's principal business activity is to organize, plan, create, and promote official fan conventions relating to sci-fi, fantasy, and horror television series and films. AR 2171.

### I. SBA Appropriately Applied the SVOG Statute and its Published Guidance in Determining Plaintiff's Principal Business Activity.

In appealing SBA's denial of its grant application, Creation claimed it was eligible for program funds as a "live venue operator or promoter" because it is a "live operator of Science Fictions conventions" and "as well as a promoter of sci-fi shows related to our licenses with various television and movie studios." AR 0525. Creation did not assert any other basis for eligibility,

*id.*, so its eligibility hinges on whether its principal business activity is indeed live performing arts. *See Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 720 (D.C. Cir. 2016) ("as a general rule, claims not presented to an agency may not be made for the first time to a reviewing court." (cleaned up)).

SBA's decision was not arbitrary and capricious because SBA evaluated Creation's application consistent with the statute and its guidance implementing the program. Under the SVOG statute, an applicant qualifies as a live venue operator or promoter if "as a *principal business activity*, [it] organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists." 15 U.S.C. § 9009a(a)(3)(A)(i)(I) (emphasis added). Absent from this list are types of events that involve large gatherings but not live artistic performances such as wedding venues, sporting events, restaurants, and air shows. AR 1056-57. For entities whose broader business operations include hosting live performing arts events but were involved in other operations as well, SBA explained in its SVOG Frequently Asked Questions (or "FAQs") that these entities must show that their principal business activity is presenting live performing arts events to qualify as a live venue operator or promoter. AR 1054-58.

SBA correctly determined that events like the fan conventions that Creation hosts are not like "live concerts, comedy shows, theatrical productions, or other events by performing artists[,]" that the statute requires an entity to host to qualify as a live venue operator or promoter. 15 U.S.C. § 9009a(a)(3)(A)(i)(I). Even though the statute includes the catch-all phrase "other events by performing artists," that catch-all phrase could not be construed to include fan conventions where the primary feature is interactions with actors through question-and-answer, autograph, and photograph sessions. AR 2171. "[W]here, as here, a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to

those objects enumerated by the preceding specific words.'" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001); *see also, United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("When Congress provides specific statutory obligations, we will not read a 'catchall' provision to impose general obligations that would include those specifically enumerated."). Concerts, comedy shows, and theatrical performances all involve actors or musicians performing their craft. Creation's events are different in kind because they involve actors and other performing artists interacting with their fans rather than acting or playing music. AR 2171. Accordingly, consistent with the statute, SBA explained that performing arts events are "musical concerts, comedy shows, theatrical productions, dance performances, or other live renderings of similarly artistic works." AR 1056. A fan convention would not qualify.

Also, in its SVOG Frequently Asked Questions, SBA defines an entity's principal business activity as "the one in which it has the greatest combined amount of revenues, expenses, employees and work hours, assets, contracts, and other business activity as compared to all its other lines of business. The SBA may also consider other factors, such as the distribution of patents, contract awards, and assets, as appropriate." AR 1056. In other words, the determination is not made solely based on an entity's revenue stream or other quantitative measurements. Instead SBA can make qualitative assessments about the entity's activities. *Id.* Entities that offer attractions such as agricultural fairs, pleasure cruises, or in this case conventions, would only qualify as a live venue operator or promoter if the entity can demonstrate that "the principal business activity is presenting live performing arts events that also include other secondary activities." AR 1091. SBA's guidance reflects the "body of experience and informed judgment" that SBA has accumulated in administering the SVOG Program, to which courts "may properly resort for

guidance" and give "considerable weight." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (cleaned up).

SBA determined that Creation was not eligible for a grant award because Creation did not demonstrate that its "principal business activity" was organizing, promoting, producing, managing, or hosting live performing arts events. AR 2168-69. Instead, Creation's principal business activity involved hosting and promoting "'official fan conventions' relating to sci-fi, fantasy, and horror television series and films." *Id.*

Creation focuses on the portions of the statute that require an applicant to "derive 70 percent of its revenue from live events" and "make[] [tickets] available for purchase by the public an average of not less than 60 days before the date of the event," 15 U.S.C. § 9009a(a)(3)(A)(II), (ii), and argues that these are the two objective pathways to eligibility. Pl. Mot at 16. But Creation ignores threshold requirements specified earlier in the statute.

The statute specifies that

> The term "live venue operator or promoter, theatrical producer, or live performing arts organization operator"—
>
> (A) means—
>
> (i) an individual or entity—
>
> (I) that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists for which—
>
> (aa) a cover charge through ticketing or front door entrance fee is applied; **and**
>
> (bb) performers are paid in an amount that is based on a percentage of sales, a guarantee (in writing or standard contract), or another mutually beneficial formal agreement; **and**
>
> (II) for which not less than 70 percent of the earned revenue of the individual or entity is generated through, to the extent related to a live event described in

> subclause (I), cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise; **or**
>
> (ii) an individual or entity that, as a principal business activity, makes available for purchase by the public an average of not less than 60 days before the date of the event tickets to events—

15 U.S.C. § 9009a(a)(3).

Per the statute, the percentage of revenue that an entity derives from live events, and the number of days before an entity makes tickets available does not become relevant until the entity has established that it "organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists" as its "principal business activity." 15 U.S.C. § 9009a(a)(3)(A)(i)(I). Creation did not qualify for an award because it did not demonstrate that it met the threshold criteria of hosting live performing arts events as its principal business activity. AR 2168-69. Accordingly, Creation's argument that it qualifies for an award because it meets the objective criteria regarding revenue and ticket sales is incorrect.

## II. SBA Properly Concluded that Live Artistic Performances were not Creation's Principal Business Activity.

SBA's decision to deny Creation an SVOG award is supported by the administrative record. Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the Court is responsible for determining "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Havens v. Mabus*, 146 F. Supp. 3d 202, 214 (D.D.C. 2015) (quoting *Occidental Eng'g Co. v. INS*, 753 F. 2d 766, 769-70 (9th Cir. 1985) (*citing Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). In an APA case, "courts may only set aside agency actions, including those of the [SBA], that are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *United Steel Int'l Union v. Pension*

*Ben. Guar. Corp.*, 839 F. Supp. 2d 232, 245 (D.D.C. 2012), *aff'd,* 707 F.3d 319 (D.C. Cir. 2013) (quoting 5 U.S.C. § 706(2)(A); *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 37 (D.D.C. 2007)). "In evaluating agency actions under this standard, courts must consider 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id. (quoting Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations and citation omitted); *Citizens to Preserve Overton Park*, 401 U.S. at 416; *DIRECTV, Inc. v. FCC*, 110 F.3d 816, 826 (D.C. Cir. 1997)).

To qualify as arbitrary and capricious, an agency typically must have "relied on factors which Congress has not intended it to consider," "entirely failed to consider an important aspect of the problem," "offered an explanation for its decision that runs counter to the evidence before the agency," or be "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Virginia v. Johnson*, 609 F. Supp. 2d 1, 6-7 (D.D.C. 2009) (quoting *State Farm*, 463 U.S. at 43 (internal quotation marks omitted)). Factual conclusions are reviewed under the substantial evidence standard and may be overturned where they are "unsupported by substantial evidence in a case." 5 U.S.C. § 706(2)(E); *Borgess Med. Ctr. v. Sebelius*, 966 F. Supp. 2d 1, 5 (D.D.C. 2013)

Applying these principles, SBA determined that Creation's "principal business activity" was not organizing, promoting, producing, managing, or hosting live performing arts events because the conventions that Creation hosts were not "musical concerts, comedy shows, theatrical productions, dance performances, or other live renderings of similarly artistic works." AR 1056; 2168-69. Instead, Creation's primary business activity was to organize, plan, create, and promote fan conventions. AR 2168-69. In making this finding, SBA relied on the documents that Creation

submitted with its SVOG application, in addition to publicly available information regarding the conventions that Creation hosted. AR 2168-69.

Creation's initial application did not reflect that Creation had hosted any live performing arts events. Instead, Creation submitted evidence that it had hosted a Star Trek convention, AR 0284, and submitted two screenshots from its website advertising a *Supernatural* fan convention. AR 0509, 0518. None of these materials advertised live artistic performances such as concerts or theatrical performances. AR 2169. SBA then allowed Creation to submit an administrative appeal and accepted additional materials from Creation on appeal, giving Creation a second chance to demonstrate that they qualified for an award. AR 0519. On appeal, Creation did not submit any materials demonstrating that it hosted live performing arts events. AR 2169. Instead, Creation submitted more materials demonstrating that it hosted fan conventions. This included a contract for Creation to host a *General Hospital* convention, AR 0523-24, a contract for a *Star Trek* convention, AR 0529, a document reflecting the cancelation of a *Stranger Things* convention, AR 0539, and a list of ticket holders to a *Supernatural* convention. AR 0540-623. In its statement accompanying its appeal, Creation described itself as "both a live operator of science fictions conventions, as well as a promoter of sci-fi shows related to our licenses with various television and movie studios." AR 0525.

After Creation filed this lawsuit, SBA again reviewed Creation's application and website and again found ample evidence that Creation was hosting Sci Fi fan conventions but little evidence that Creation was hosting live performing arts events. AR 2169. The website included information about a *Supernatural* fan convention featuring appearances by the show's cast members and opportunities for photographs with, and autographs from, the cast members as well as meditation sessions, show screenings, and makeup tutorials. *Id.*

Creation argues SBA's decision ignored that the "fan interactions" at these conventions occur before seated audiences with live music and a host. Pl. Mot. at 19. In support of this argument, Creation cites its reconsideration letter from Eduardo Rodreguez, Creation's Chief Financial Officer. AR 1145-46. But SBA considered this letter and attachments and determined that they were not persuasive in demonstrating that Creation's principal business activity was live artistic performances. AR 2170. Rodreguez submitted "performer contracts" but none of the contracts were signed by Creation or the contracted individual. AR 1180-1224. Moreover, most of the materials that Rodreguez submitted demonstrate that live performances are not the primary feature of the events that Creation hosts. For example, Rodriguez submitted a "program of events" for a *Supernatural* fan convention that Creation was set to host in Denver, Colorado. AR 1171. But this schedule consists of photo-ops, meet and greets, autographs. AR 1171-74. Absent from this schedule are any performances. *Id.*

Although Creation's contract with actor Beverely Elliott includes a requirement that Elliott perform 4-5 songs in a Saturday night concert, this concert is not the primary purpose of the event. AR 1180. Elliott must appear for a 60-90 minute question-and-answer session, sign 600 autographs and appear in 300 fan photos. *Id.* This is similar to Creation's contract with *Supernatural* actor Brianna Buckmaster. AR 1184-85. Although, under the contract, Buckmaster must perform 1-2 songs as part of a Saturday night concert, Buckmaster's primary activities are a question-and-answer session, autograph sessions, photograph sessions, and meet and greets. AR 1185. The contract with *Vampire Diaries* actor Chase Coleman, does not include any performances, only a question-and-answer session, autograph and photograph sessions, and a private meet and greet. AR 1189.

For an event that includes attractions other than live artistic performances to qualify as a live performance operator or venue, the main event must be the live performance. AR 1091. As SBA explained, "the primary contracted duty of virtually all of the individuals is to engage in Q & A sessions and other fan interaction events." AR 2171. "The Saturday concert appears to occur over just a small amount of total time the events operate. No information is provided that would allow SBA to conclude that the Saturday concert represents the principal expense or attraction of the events." *Id.*

Creation argues SBA ignored Creation's revenue and expense structure. Pl. Mot. at 22. Creation misses the point. SBA does not dispute that creation sells tickets to its events or that it pays airline or lodging expenses for "performers" or that it pays venue or equipment costs. Compare Pl. Mot at 21-22 with AR 2168-72. Instead, SBA found that the types of events that Creation hosts are fan conventions that primarily feature interactions with actors rather than performances. AR 2171. Regardless of its ticketing or revenue structure, Creation has not established that its events qualify as live performing arts events. *Id.*

Creation next argues that the "physical configuration" of its events demonstrates that "its principal business activity is the presentation of live performing arts." Pl. Mot. at 22. But the statute mentions nothing about the "physical configuration" of the venue where the event occurs, only the type of event that is being put on, and that event must be a "live performing arts" event. 15 U.S.C. § 9009a(a)(3)(A)(i)(I). As an example, Creation identifies the *Supernatural* fan convention that it hosted in Denver, which included events described as "general sessions" in a ballroom with a theatre setup. AR 1143, 1171-74. But nothing in the materials demonstrates that these "general sessions" are musical or theatrical performances rather than live question-and-answer sessions. *Id.* To be sure the letter from Rodriguez states that during this convention, "[t]he

actors will all perform during the show on stage." AR 1143. But Creation submitted no contemporaneous documents demonstrating that these actors were, in fact, performing, rather than participating in question-and-answer sessions, which is the standard programming for similar events that Creation hosts. AR 2170. SBA also reasonably discounted these representations as inconsistent with Creation's earlier representation that it is "both a live operator of science fictions conventions, as well as a promoter of sci-fi shows related to our licenses with various television and movie studios." AR 0525, 2170. A fan convention does not transform into a live performing arts event simply because parts of the convention occur in a room set up like a theatre or concert hall.

Creation further faults SBA for failing to adequately scrutinize Creation's website. Pl. Mot. at 24-25. But Creation fails to identify any information on the website that would serve as a reason for SBA to find that Creation had satisfied the eligibility criteria to qualify as a live venue operator or promoter. 15 U.S.C. § 9009a(a)(3). In reaching its decision, SBA noted that Creation's website boasts "a 50-year tradition of producing the world's leading conventions for fans of genre television and film." AR 2169 (citing creationent.com (accessed Jun. 22, 2022)).

Creation goes on to highlight events that it hosted that SBA should have considered as live performing arts events. Pl. Mot. at 26-27. For example, Creation includes a contract with the band Louden Swain to appear at the *Supernatural* conventions. AR 1228. But the contract reveals that Louden Swain is not the main attraction. AR 1229. Instead, Louden Swain is supposed to "perform interstitial music segments in between and introducing each Q&A panel on stage." *Id.* The song selection is expected to be related to the "actors on stage." *Id.* An interstitial performance is one that is "occurring in or being an interval or intervening space or segment." Interstitial, Merriam Webster, https://www.merriam-webster.com/dictionary/interstitial (last visited May 24, 2026),

thus demonstrating that Louden Swain's performance is not a main event. Louden Swain frontman Rob Benedict's contract with Creation demonstrates that aside from his interstitial performances with his band, Benedict's role is more akin to that of a celebrity appearing at a fan convention. AR 1237. The contract requires Benedict to host the event, appear on stage for a question-and-answer session, and participate in photo-op, autograph, and meet and greet sessions. *Id.*

Musician Jensen Ackles's appearance at a Creation-hosted event similarly does not support Creation's application. Contra, Pl. Mot. at 27. The contract between Creation and Ackles does not require Ackles to perform any songs. AR 2193. Instead, the contract is similar to the contract that Creation entered into with actors like Elliott, Buckmaster, and Coleman discussed above. *Id.* Specifically, Ackles is required to appear for a question-and-answer session, sign autographs, appear in photo-ops with fans. *Id.* Creation cites the Rodreguez Declaration which claims that Ackles "meets the requirements of his engagement by playing an almost two-hour musical concert with his band Radio Company. The musical concert generally takes place on Saturday night during the supernatural gala." AR 1159. But even if this statement is true, this is just one of many events that Creation hosts and the Rodreguez declaration provides no information regarding how often Creation hosts concerts with Ackles. *Id.* Just because Creation hosts an occasional concert does not establish that hosting concerts is Creation's principal business activity as opposed to an ancillary activity. AR 1055. Moreover, Rodriguez's attempt to explain away the lack of reference to musical performances in the contract between Ackles and Creation is unpersuasive considering that some of the other contracts require the guest to perform songs as a part of their appearances which otherwise consist mostly of question-and-answer sessions, autograph signings, and photo-ops. See e.g., AR 1180, 1184-85.

If the Court is persuaded that the fan conventions that Creation hosts are live performing arts events, then the same argument could be made regarding the most recent Republican and Democratic National Conventions. Both conventions occurred in arenas, the Republican Convention at the Fersev Forum in Milwaukee, Wisconsin,[1] and the Democratic Convention at the United Center in Chicago, Illinois.[2] Both conventions featured interstitial musical performances by artists such as Lee Greenwald and Kid Rock at the Republican Convention[3] and Stevie Wonder and Pink at the Democratic Convention.[4] But even though these events featured some musical performances and occurred in arenas with seating, no one would dispute that the principal business activity of the Republican and Democratic National Committees is to win elections and that the purpose of these conventions was to nominate candidates for President and Vice President of the United States and promote their candidacies, not to feature live performing arts.

More broadly, SBA was justifiably skeptical of the materials, like the Rodreguez letter and declaration, that Creation submitted during litigation. AR 2170. SBA explained that even though it reviewed these materials, the materials represent "a unique effort by Creation to fix deficiencies in its application during litigation—an opportunity not available to other applicants." *Id.* The Rodreguez letter includes collages of people singing and playing instruments on stage, rather than

---

1 RNC 2024 Master Event Calendar, https://prod-media.gopconvention2024.com/media/documents/MKE24_-_Master_Calendar_v8.pdf (last visited, May 24, 2026)

2 DNC 2024, Democratic National Convention, https://www.unitedcenter.com/dnc-2024/ (last visited, May 24, 2026)

3 Emma Grazado, Maddie Driggers, & Amy Nakamura, *What's playing at the RNC convention? Here's the unofficial playlist*, Wash. Post (Jul. 18, 2024) https://www.washingtonpost.com/politics/2024/07/18/rnc-music-playlist-republican-convention/

4 Kimi Robinson, *Who's performed at the DNC? Pink, Stevie Wonder, John Legend, more hit the stage*, USA Today (Aug. 21, 2024) https://www.usatoday.com/story/entertainment/music/2024/08/21/democratic-national-convention-2024-music-performers/74892920007/

stand along materials promoting musical performances. AR 1144-46. The collages appear to have been created specifically for Creation's SVOG application. *Id.* Indeed, Creation only began highlighting musical performances at its events after it received SBA's July 7, 2022 decision where SBA stated "[a] holistic review of the application, submitted documentation, applicant's website and social media pages indicates that the applicant's principal business activity is to organize, plan, create and promote science cosplay conventions." AR 1044. This conclusion was reasonable considering that Creation had previously described itself as "both a live operator of science fictions conventions, as well as a promoter of sci-fi shows related to our licenses with various television and movie studios." AR 0525.

Creation's mid litigation attempt to reframe its business activities warrants even more scrutiny considering that Creation had previously stated, under penalty of perjury, that it did not pay its performers. AR 0012, 1045. If Creation did not pay its performers, that, standing alone, would be reason enough to deny Creation's application. 15 U.S.C. § 9009a(a)(3)(A)(i)(I)(bb). Although Creation later submitted evidence that it did, in fact, pay the actors that appeared at its conventions, Creation's prior statement under penalty of perjury that it did not pay its performers was an added reason to view the supplemental materials that Creation submitted for the first time before SBA issued its fourth decision with skepticism. AR 2169. Further, as noted above, the contracts that Creation submitted were not signed, which raises questions about whether the tasks described in the contracts were performed. *See Id.* These discrepancies further support a conclusion that SBA did not err in finding Creation had not provided sufficient documentation to demonstrate that it hosted live performing arts events. *See generally, Affum v. United States*, 566 F.3d 1150, 1164 (D.C. Cir. 2009) ("agency need not accept a store owner's [bare] claim"); *Camara v. Mastro's Rests*. LLC, 952 F.3d 372, 375 (D.C. Cir. 2020) ("conclusory allegations" in an

affidavit are inadequate to raise a genuine issue of material fact); *cf. Home Box Off., Inc. v. FCC*, 567 F.2d 9, 36 n.58 (D.C. Cir. 1977) ("comments which themselves . . . do not disclose the factual or policy basis on which they rest require no response. There must be some basis for thinking a position taken in opposition to the agency is true."); *Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 75 (D.D.C. 2020) ("agencies need not accept uncritically any evidence submitted").

Importantly, in considering whether SBA correctly assessed Creation's principal business activity Courts "do not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010). Indeed, "[i]t would defy that standard of review [under *State Farm*] to invalidate [an agency's] decision simply because there are alternate methods by which to calculate [], even if those alternatives might ultimately produce a more accurate" result. *Baystate Franklin Med. Ctr. v. Azar*, 950 F.3d 84, 89 (D.C. Cir. 2020). The agency's decision is presumed to be valid, and a court must not substitute its judgment for that of the agency. *Havens,* 146 F. Supp. 3d at 214 (citing *Citizens to Preserve Overton Park*, 401 U.S., 415; *State Farm*, 463 U.S. at 43).

## III. <u>SBA Did Not Depart from Its Internal Guidance and Precedent.</u>

Finally, Creation argues that SBA's decision violated its own guidance and precedent. Pl. Mot at 30. Not so. As an initial matter, to advance this argument Creation relies on a report from the SBA Office of Inspector General that is not part of the administrative record and argues that the report constitutes SBA's internal guidance. *Id.* Creation misunderstands the purpose of this report and its relevance to this litigation because an Inspector General report is not "internal guidance." Inspectors General are established within agencies "to conduct and supervise audits and investigations relating to the programs and operations." 5 U.S.C. § 402(b)(1). The SBA

Inspector General publishes reports, like the one that Creation cites, to keep the Administrator and Congress informed of "fraud and other serious problems, abuses, and deficiencies relating to the administration of [SBA] programs", "to recommend corrective action concerning the problems, abuses, and deficiencies, and to report on the progress made in implementing the corrective action." 5 U.S.C. § 404(a)(5). The report is not meant to serve as agency guidance, inform SVOG applicants on how to prepare and submit their applications, or instruct SBA staff on how to review SVOG applications. The Office of Inspector General is "an independent and objective oversight office created within SBA by the Inspector General Act. Small Business Admin., About the Office of Inspector General, https://www.sba.gov/about-sba/oversight-advocacy/office-inspector-general/about-office-inspector-general (last visited May 25, 2026). The Inspector General is not tasked with administering or promulgating rules or guidance for the SVOG program or any other SBA program.

To be sure, SBA published guidance to SVOG applicants explaining how SBA would evaluate applications. See AR 1047, 1087. Specifically, SBA published a list of answers to "Frequently Asked Questions," which "answers common questions about the SVOG program, defines terms, and provides additional guidance." AR 1087. SBA instructed applicants to "refer to and carefully review the FAQs for guidance as you complete the SVOG application." *Id.* Unlike in the OIG report, nothing in the published guidance states that SBA would "presume applicant assertions to be true" or view "data in the light most favorable to the applicant." Compare AR 1047-1128 with OIG Report (ECF No. 63-2 at 14-15).

Creation purports to quote the OIG report claiming that the report reflects "that applicants demonstrating live events 'at any frequency' were considered to satisfy the 'primary business' requirement." Pl. Mot. at 30. Creation purports to quote the OIG report at pages 7-8 but no such

language is at page 7-8 or anywhere in the report. OIG Report (ECF No. 63-2 at 5-30). On the contrary, the guidance specifies that for an entity to be eligible it must demonstrate that its principal business activity is "live concerts, comedy shows, theatrical productions or other events by performing artists." AR 1095. For example, SBA explained that for an entity like a dinner theatre to qualify, the dinner theatre must demonstrate that its principal line of business is live venue operation rather than restaurant operation. *Id.*

Accordingly, nothing in the OIG report demonstrates that SBA departed from its internal guidance and precedent.

**CONCLUSION**

For these reasons, the Court should grant SBA's motion for summary judgment and deny Creation's cross motion for summary judgment.

Dated: May 27, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *_/s/ John J. Bardo_*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*